UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTA S.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 25-cv-13613<br>Honorable F. Kay Behm<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 12, 14)**

## I. Introduction

Plaintiff Christa S. appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for disability insurance benefits (DIB) under the Social Security Act. Both parties filed summary judgment motions, which have been referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No. 4; ECF No. 12; ECF No. 14. After review of the record, the Court **RECOMMENDS** that:

- Plaintiff’s motion (ECF No. 12) be **GRANTED**;

- the Commissioner's motion (ECF No. 14) be **DENIED**; and
- the ALJ's decision be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

## II. Background

### A. Plaintiff's Background and Disability Application

Born in August 1981, plaintiff was 41 years old when she applied for DIB in July 2023, with an alleged disability onset date of October 24, 2022. ECF No. 9-1, PageID.100, 113. She had past relevant work as a counter/parts clerk. *Id.*, PageID.113. Plaintiff claimed disability from Ehlers-Danlos syndrome (EDS), postural orthostatic tachycardia syndrome (POTS), degenerative disc disease, fibromyalgia, bipolar, migraines, retinal degeneration, and myopia. *Id.*, PageID.87.

After a hearing, during which plaintiff and a vocational expert (VE) testified, the ALJ found plaintiff not disabled. *Id.*, PageID.100, 115. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *Id.*, PageID.41. Plaintiff timely filed for judicial review. ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, she found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 24, 2022. ECF No. 9-1, PageID.102. At the second step, she found that plaintiff had the severe impairments of cardiac dysrhythmia; retinal detachments and defects; fibromyalgia; POTS; discogenic and degenerative back disorder; EDS; neoplasm of soft tissues of the face; headaches; essential tremor; mild intermittent asthma; depressive disorder; bipolar disorder; and anxiety disorder. *Id.* The ALJ found that plaintiff's alleged irritable bowel syndrome (IBS) was not a severe impairment. *Id.*, PageID.103. Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.103-106.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform a reduced range of light work[2] with these limitations:

[2] Light work involves occasionally lifting or carrying 20 pounds at a time, frequently lifting or carrying ten pounds at a time, and standing or walking for six hours out of an eight-hour workday. 20 C.F.R. § 404.1567(b); Social Security Regulation (SSR) 83-10.

> [Plaintiff] can frequently climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can frequently balance and stoop; can frequently kneel, crouch, and crawl; can occasionally be exposed to unprotected heights and dangerous machinery; limited to performing simple tasks; limited to making simple work-related decisions; requires the option to alternate between sitting and standing after 30 minutes in either position and will take 1 minute to alternate between sitting and standing, but would not be off task more than 10 percent of the workday due to the sit/stand option; must avoid more than occasional exposure to pulmonary irritants, such as dusts, odors, fumes, and gases.

*Id.*, PageID.106. At step four, the ALJ found that plaintiff cannot perform any past relevant work. *Id.*, PageID.113. At the final step, after considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that plaintiff could perform, including positions as a hand packager, routing clerk, and marking clerk. *Id.*, PageID.114.

## III. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[3] and

[3] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec*., 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs*., 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff argues that the Court should remand this matter because the ALJ failed adequately to consider her subjective symptoms and substantial

evidence does not support the RFC. ECF No. 12. The Court agrees and recommends that the ALJ's decision be remanded.

**B.**

Generally, ALJs are required to evaluate subjective symptoms by confirming that objective medical evidence of the alleged condition exists and determining whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p. The ALJ then assesses any work-related limitations by determining the intensity, persistence and limiting effects of these symptoms. *See* 20 C.F.R. § 404.1529; SSR 16-3p.

An ALJ's subjective symptom evaluation should not be disturbed "absent compelling reasons." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). An ALJ must explain the bases of her subjective symptom evaluation determination, and the reviewing court should not be left to speculate about the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015).

The nature of POTS complicates this analysis. POTS is a disorder of the autonomic nervous system causing orthostatic intolerance and excessive tachycardia on standing. *Ferguson v. Comm'r of Soc. Sec.*, No. 12-15080, 2014 WL 106561, at *15 (E.D. Mich. Jan. 10, 2014). "While the diagnostic criteria focus on the abnormal heart rate increase on standing, POTS usually presents with symptoms much more complex than a simple increase in heart rate." *Id.* Those symptoms include severe fatigue, dizziness or lightheadedness with prolonged sitting or standing, fainting, heart palpitations, nausea, vomiting, headaches, and brain fog.[4] Like fibromyalgia, POTS is difficult to diagnose and "is not easily identifiable with objective test results." *Id.* at *16.

Recognizing this difficulty, many courts have applied a rationale like that applied in fibromyalgia cases, concluding that an ALJ's rejection of a plaintiff's subjective symptoms based purely on a lack of objective medical evidence is grounds for remand. *Id.*; *Christina L. v. Comm'r of Soc. Sec.*, No. 1:22cv303, 2023 WL 4862901, at *3 (N.D. Ind. July 31, 2023); *Drabczyk v. Comm'r of Soc. Sec.*, No. 18-CV-355, 2020 WL 4390701, at *4

[4] *See* Johns Hopkins Medicine, Postural Orthostatic Tachycardia Syndrome (POTS), https://www.hopkinsmedicine.org/health/conditions-and-diseases/postural-orthostatic-tachycardia-syndrome-pots (last visited Oct. 1, 2026).

(W.D.N.Y. July 31, 2020); *Goodrich v. Comm'r of Soc. Sec.*, No. 6:10-cv-1818, 2012 WL 750291, at *11 (M.D. Fla. Feb. 7, 2012), *adopted*, 2012 WL 760874 (M.D. Fla. Mar. 8, 2012); *see also Outward v. Eaton Corp. Disability Plan for U.S. Employees*, 808 F. App'x 296, 318 (6th Cir. 2020) (finding, in the ERISA context, that it was unreasonable for a plan administrator to rely on a lack of objective testing to discredit the plaintiff's POTS symptoms). Instead, ALJs should examine the plaintiff's treatment history, as well as clinical analysis and findings from long-term treating physicians. *Ferguson*, 2014 WL 106561, at *16; *Drabczyk*, 2020 WL 4390701, at *4. And without objective evidence substantiating subjective symptoms, ALJs are to consider a plaintiff's daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; the type, dosage, and side effects of medication to alleviate symptoms; and any other treatment or measures used to relieve pain. 20 C.F.R. § 404.1529(c)(3).

For applicants, like plaintiff, who filed after March 27, 2017, their treating physicians' opinions are not accorded controlling weight. *See* 20 C.F.R. § 404.1520c. But treating physicians' opinions about a claimant with POTS should continue to carry special weight even under the new rules given the lack of relevance of objective evidence. *See Beckrow v.*

*Saul*, No. 19-12834, 2021 WL 900558, at *3 n.2 (E.D. Mich. Feb. 18, 2021). When a claimant alleges disability because of POTS, courts should remain critical of ALJ decisions that rely more on the record-review opinions of state agency experts than on opinions from treating physicians. *Id.*

In *Rogers*, a seminal opinion about consideration of disability claims involving fibromyalgia, the court found that the ALJ erred by relying on the opinion of the state agency expert instead of the plaintiff's treating physicians. 486 F.3d at 244-46. The *Rogers* court found it significant that the treating physicians' records reflected continuous and frequent treatment for intense pain and stiffness; that the treating physicians arrived at the same diagnosis of fibromyalgia; and that one of the treating physicians was a rheumatologist, unlike the state agency record reviewer. *Id.* at 244-45.

The court emphasized that treating physicians' opinions were "of special significance given the unique nature of fibromyalgia," and criticized the ALJ for relying on the opinions of doctors who had not examined the plaintiff. *Id.* at 245. The court also noted that "the foundation for the opinions offered" by those non-examining physicians "was the lack of objective findings." *Id.* "[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Id.*

The ALJ in *Rogers* also wrongly relied on the lack of corroborating objective evidence to find the claimant's subjective complaints not fully credible. *Id.* at 246-48. Worse yet, the ALJ's falsely described the claimant as being "fairly active," and even the ALJ's mischaracterized version of the claimant's activities were "not comparable to typical work activities." *Id.* at 248.

**C.**

Like in the cases discussed above, the ALJ placed inordinate emphasis on the lack of objective medical evidence supporting plaintiff's alleged POTS symptoms.

The ALJ acknowledged that plaintiff had POTS and reported symptoms like constant dizziness and fatigue, heart palpitations, chest pain, and blackouts. ECF No. 9-1, PageID.106-107. But she concluded that the limiting effects of those alleged symptoms conflicted with the record. *Id.* The ALJ explained that plaintiff's POTS symptoms had been "managed with medication and nutrition supplementation with generally good results and cardiovascular examinations by the claimant's healthcare providers have usually been unremarkable." *Id.* The ALJ correctly noted that plaintiff stated that her medication regimen was helping and that cardiac examinations and testing were often normal. *Id.*, PageID.107-108

(citing ECF No. 9-1, PageID.522-526; ECF No. 9-2, PageID.1063, 1167, 1183-1186, 1293, 1295, 1356, 1429).

But the ALJ did not adequately consider plaintiff's self-reported symptoms. In February 2022, plaintiff reported to neurologist Lisa Stropp, M.D., that she developed POTS symptoms in middle school, experiencing heat and exercise intolerance and dizziness. *Id.*, PageID.556. Plaintiff said that her symptoms worsened after 2021 when she had COVID-19, explaining that she was fatigued and that standing for long periods caused pre-syncopal symptoms like blurred vision, ringing in her ears, and body shaking requiring her to sit down. *Id.* Those symptoms were incompatible with her work, which required her to be on her feet for most of the day. *Id.* Plaintiff was on heart rate and blood pressure medications that were helping her symptoms, and she maintained hydration, used salt tablets, and wore compression socks. *Id.* Her cardiologist also referred her to the Vanderbilt University autonomic dysfunction multidisciplinary clinic for evaluation. *Id.*, PageID.557.

Dr. Stropp noted normal physical examination findings. *Id.*, PageID.558. A 2019 cardiac monitoring test showed that plaintiff experienced dizziness and chest pain during episodes of sinus tachycardia. *Id.*, PageID.559. Although a 2019 tilt table test was inconclusive, Dr.

Stropp determined that plaintiff's documented tachycardia and clinical presentation aligned with a POTS diagnosis. *Id.* Further testing was unnecessary, as treatment recommendations would remain unchanged. *Id.*

Plaintiff saw Vanderbilt cardiologist James Muldowney, M.D., in August 2022 and reported orthostatic intolerance, fatigue, high heart rate, rare near-fainting episodes, and tunnel vision every few months. *Id.*, PageID.522. Her medications were "working pretty good" to manage her blood pressure and tachycardia, but she still reported feeling exhausted and anxious all the time, with her heart rate spiking when she walked around or became stressed. *Id.* Dr. Muldowney observed tachycardia on examination and noted that autonomic function testing aligned with POTS. *Id.*, PageID.523-525. Because he noted "hyperadrenergic features"[5] with testing, Dr. Muldowney prescribed guanfacine, and he recommended Adderall for plaintiff's fatigue. *Id.*, PageID.525-526. Dr. Muldowney also recommended measures like compression of the legs and abdomen,

[5] Hyperadrenergic POTS means the "sympathetic nervous system ('fight-or-flight' response) is overactive," leading to other symptoms like shakiness, anxiety, and migraines—which plaintiff also reports. *See* https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots (last visited Oct. 1, 2025); Cognitive Fx, Hyperadrenergic POTS: Symptoms, Causes, & Treating the Subtype Most Doctors Miss, https://www.cognitivefxusa.com/blog/hyperadrenergic-pots-symptoms-causes-and-how-to-treat-the-subtype-most-doctors-miss (last visited Oct. 1, 2026).

increasing salt and water intake, and exercise. *Id.*, PageID.526-527. He cautioned plaintiff that if she experienced symptoms of pre-syncope (e.g., lightheadedness, weakness, vision changes), she should immediately lie down or, if that is impossible, move around. *Id.*, PageID.527.

In October 2022, plaintiff told her primary care physician, Jason Betcher, M.D., that she experienced fatigue and generalized weakness that prevented her from working. ECF No. 9-2, PageID.909. Dr. Betcher summarized plaintiff's medical issues and, despite a relatively normal physical examination, recommended a six-month hiatus from work. *Id.*, PageID.909-910. In November 2022, neurologist Richard Kovar, D.O., noted that plaintiff still had orthostatic hypotension, that fatigue was a "huge factor," and that the Vanderbilt team was trying various medications but were considering a pacemaker because of plaintiff's "severe dysautonomia." ECF No. 9-1, PageID.449-450.

Plaintiff's POTS symptoms began to worsen around April 2023, when she complained of greater fatigue. ECF No. 9-2, PageID.879. In July 2023, plaintiff told Dr. Betcher that she can only sit or stand for a few minutes at a time before becoming dizzy and that she "feels awful" every day, with migraines and difficulty focusing. *Id.*, PageID.869. Despite making normal cardiovascular findings, Dr. Betcher did not question

plaintiff's subjective report, instead stating that she "has been evaluated by several specialists, including neurology, psychiatry, gastroenterology, ENT, cardiology, and the Vanderbilt autonomic clinic and patient has had extensive testing confirming her diagnoses." *Id.*, PageID.869-870.

Later in July 2023, plaintiff told her local cardiologist, Akhil Gulati, M.D., that she was having constant dizziness and fatigue with palpitations and chest pain. *Id.*, PageID.1185. Dr. Gulati made normal cardiac examination findings and noted that plaintiff was "doing better from a blood pressure and heart rate standpoint," suggesting that her psychiatric medications might be contributing to her symptoms. *Id.*, PageID.1185-1186.

In August 2023, plaintiff again saw Dr. Muldowney, reporting that she was not doing well and could barely function. *Id.*, PageID.1292. Plaintiff complained of dizziness, tingling, overheating, blackouts several times a day after being on her feet, and fatigue. *Id.* She stated that she seldom had a high heart rate but that it would "skyrocket" if she became anxious or climbed stairs. *Id.* Physical examination findings were normal, and Dr. Muldowney noted that plaintiff's heart rate and blood pressure were well controlled. *Id.*, PageID.1293, 1295. He also suggested that polypharmacy

could contribute to her symptoms but adjusted her cardiac medications. *Id.*, PageID.1295.

During a January 2024 appointment with Dr. Kovar, plaintiff reported that she was “getting benefit” from her cardiac medications. *Id.*, PageID.1356. Yet she also stated that she had stopped driving because of frequent dizziness and near-syncope episodes. *Id.*, PageID.1354. Plaintiff made similar complaints of fatigue, lightheadedness, and dizziness to the consultative examiner. *Id.*, PageID.1061. And in April 2024, plaintiff told Dr. Gulati that she felt “absolutely, completely fatigued,” sometimes had heart palpitations, and had almost daily episodes of feeling flushed, terrible after eating, and a “weird coloration” on her feet. *Id.*, PageID.1182. She also stated that she had to adjust her cardiac medications because her heart rate was getting too low and her blood pressure too high. *Id.* Plaintiff’s physical examination findings and test results were normal, and Dr. Gulati stated that her palpitations were well controlled. *Id.*, PageID.1167, 1183-1184. Dr. Gulati noted that he discussed plaintiff’s “various symptoms and how frustrating it is that she does not have a way to get better yet,” recommending that she see an allergist for a possible immune system dysfunction. *Id.*, PageID.1184.

Given this evidence, the ALJ's conclusion that plaintiff's POTS was managed with medication with "good results" is inaccurate. The ALJ's overemphasis on normal cardiovascular findings is inappropriate when plaintiff continued to complain of severe fatigue; blackouts; and dizziness, lightheadedness, and heart racing when standing or active. Several providers—including a primary care provider, cardiologists, neurologists, a gastroenterologist, and a Vanderbilt POTS specialist—diagnosed plaintiff with POTS after evaluating her symptoms. "These medical records bolster [p]laintiff's claims of symptoms and limitations," given the "'improbability' that a claimant would be a 'good enough actress to fool a host of doctors' into thinking she suffers" from severe symptoms. *Christina L.*, 2023 WL 4862901, at *3 (quoting *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)). As explained in *Ferguson*:

> There is also no evidence in the record that plaintiff was malingering or that any of the many treating physicians and specialists believed that she was making up or exaggerating her symptoms. Simply because POTS is difficult to diagnose, and it is not easily identifiable with objective test results, does not make the symptoms and limitations it may cause somehow less real.

2014 WL 106561, at *16. Plaintiff's consultations with various medical specialists also corroborate her subjective symptoms. *See Drabczyk*, 2020 WL 4390701, at *4 (quoting SSR 16-3p) ("Persistent attempts to obtain

relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").

The ALJ also disregarded the effect of plaintiff's gastrointestinal (GI) symptoms, which her gastroenterologist, Neil Sheth, M.D., attributed to POTS. ECF No. 9-1, PageID.351; ECF No. 9-2, PageID.1282. The ALJ determined at Step 3 that IBS was not a medically determinable impairment, let alone a severe impairment. ECF No. 9-1, PageID.103. She reasoned that plaintiff "reported being diagnosed with IBS to some of her healthcare providers, but the record has no evidence of objective testing to confirm that diagnosis." *Id.* (citing 20 C.F.R. § 404.1521; SSR 16-3p)). The rest of the ALJ's opinion is silent on the issue of plaintiff's GI symptoms. Plaintiff does not argue that the ALJ erred in finding IBS neither a medically determinable nor a severe impairment. Yet the ALJ ignored plaintiff's GI symptoms as a manifestation of POTS, which *was* a severe impairment. Once a severe impairment is established, an ALJ must consider the entire case record in evaluating the intensity, persistence, and limiting effect of the resulting symptoms. SSR 16-3p. The ALJ did not do so here.

Plaintiff reported longstanding GI symptoms causing diarrhea, constipation, discomfort when eating, and extreme fatigue after eating such that she could not eat while at work. ECF No. 9-1, PageID.556. In February 2022, plaintiff reported a 40-pound unintentional weight loss—she was 107 pounds at 5’4” tall. *Id.*, PageID.556, 558. Results of a gastric emptying study performed in 2021 were normal, but the test was limited in sensitivity because of incomplete meal consumption. *Id.*, PageID.559.

Dr. Sheth referred plaintiff to a dietician and treated her with many medications for GI dysmotility, generalized abdominal pain, chronic nausea, and low body mass index. *Id.*, PageID.348, 382; ECF No. 9-2, PageID.909. Dr. Sheth stated that there were limited treatment options to address plaintiff’s greatest complaint of GI pain. ECF No. 9-1, PageID.382, 389; ECF No. 9-2, PageID.1287. Given plaintiff’s low appetite and eating intolerance, Dr. Sheth also noted the possibility of a feeding tube if necessary; but in October 2022 her weight was stable at 114 pounds. ECF No. 9-1, PageID.348, 351, 353, 378, 382; ECF No. 9-2, PageID.1287. Despite treatment, plaintiff consistently complained of GI upset, especially after eating, and often reported that she could not tolerate many medications because they exacerbated her symptoms. ECF No. 9-1, PageID.348, 357, 378, 389, 556-557; ECF No. 9-2, PageID.1061, 1346,

1351. In October 2024, plaintiff reported persistent nausea and that her weight had dropped to 96 pounds since January 2024. ECF No. 9-2, PageID.1346. During the January 2025 hearing, plaintiff reported that she weighed 93 pounds. ECF No. 9-1, PageID.62.

The Commissioner argues that the ALJ reasoned that plaintiff received only conservative treatment for her conditions and that it was effective in managing her symptoms. ECF No. 14, PageID.1562-1563, 1567. As determined above, the ALJ's conclusion that treatment was effective for plaintiff's POTS is inaccurate. And the ALJ never discredited plaintiff's subjective symptoms because she received only conservative treatment for POTS. *See generally* ECF No. 9-1, PageID.100-115. That element of the Commissioner's argument amounts to an impermissible post-hoc rationalization. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("'In reviewing an ALJ's findings and conclusions, this Court shall not accept appellate counsel's *post hoc* rationalization for agency action in lieu of accurate reasons and findings enunciated by the Board." (cleaned up)). Even so, treatment for POTS is typically limited to conservative measures like medication and lifestyle modifications. *See Christina L.*, 2023 WL 4862901, at *3; *Ferguson*, 2014 WL 106561, at *15. Thus, the lack of more aggressive treatment options is not significant.

Like the ALJs in *Rogers* and *Ferguson*, the ALJ here relied exclusively on the lack of objective medical evidence to verify plaintiff's assertions of impairment due to her POTS. As discussed, courts have rejected that reasoning. *Christina L.*, 2023 WL 4862901, at *3; *Drabczyk*, 2020 WL 4390701, at *4; *Ferguson*, 2014 WL 106561, at *16; *Goodrich*, 2012 WL 750291, at *11. The ALJ's failure to justify discounting plaintiff's claims of disabling impairment consistent with her POTS is reversible error.

**D.**

The Court also finds that the ALJ's RFC assessment is not supported by substantial evidence.

An RFC is "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. An ALJ's decision must "provide an accurate and logical bridge between the evidence" and the RFC. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017) (cleaned up); *see also Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be building blocks of the [RFC] finding, but the [ALJ] must make a connection between the evidence relied on and the conclusion reached."). That is, the "ALJ must articulate, at some minimum level, his

analysis of the evidence to allow the appellate court to trace the path of his reasoning" to permit meaningful review. *Cortes v. Comm'r of Soc. Sec.*, No. 18-13347, 2020 WL 2812761, at *10 (E.D. Mich. May 29, 2020) (cleaned up).

Plaintiff testified that she spends most of the day lying down elevating her legs and that she can only tolerate standing for less than five minutes and sitting for 30 minutes. ECF No. 9-1, PageID.60. She also reported frequent GI symptoms like diarrhea, constipation, and abdominal pain. *Id.*, PageID.63. These complaints align with plaintiff's complaints to her providers that she could not sit or stand longer than a few minutes because her POTS caused severe fatigue; blackouts; dizziness, lightheadedness, and heart racing when standing or active; and GI symptoms. *See, e.g.*, *id.*, PageID.348, 357, 389, 522, 556; ECF No. 9-2, PageID.869, 1061, 1182, 1292, 1346, 1354. Plaintiff even stated that she had stopped driving because of dizziness and pre-syncope. ECF No. 9-2, PageID.1354. As discussed, plaintiff reported these symptoms despite treatment controlling her heart rate and blood pressure, and her providers consistently recognized that she had POTS. *See, e.g.*, *id.*, PageID.869-870, 1184; ECF No. 9-1, PageID.449-450, 523-525, 559.

But the ALJ did not address plaintiff's persistent complaints of fatigue, dizziness, blackouts, and GI symptoms resulting in an intolerance for sitting or standing and an inability to drive in reaching her RFC determination. The ALJ thus provided no "logical bridge" between the evidence of plaintiff's POTS and her conclusion that plaintiff could perform light work with the added limitations reflected in the RFC. *See Gross*, 247 F. Supp. 3d at 830 ("In the instant case, it is unclear on what the ALJ based her ultimate RFC conclusion, and she draws no accurate and logical bridge to instruct the Court of her reasoning."); *see also Walker v. Comm'r of Soc. Sec.*, No. 16-CV-13902, 2018 WL 795730, at *5 (E.D. Mich. Jan. 16, 2018), *adopted*, 2018 WL 783149 (E.D. Mich. Feb. 8, 2018) (remanding case because ALJ's failure to discuss claimant's degenerative disc disease "at all steps of the sequential evaluation process" was erroneous). Instead, the ALJ relied on the type of "objective medical evidence" that would be expected with "other physical impairments." *See Foster v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 709, 717 (S.D. Ohio 2019).

The ALJ's error "has inhibited the court's ability to perform a meaningful review of this matter." *Walker*, 2018 WL 795730, at *5. Thus, this decision is unsupported by substantial evidence and warrants remand for the ALJ to reconsider the record.

**E.**

Plaintiff asks the Court to reverse the ALJ's decision, award benefits, and remand solely for calculation of benefits. ECF No. 12, PageID.1550. Ordinarily, when an ALJ has committed reversible error, remand for further consideration is favored over an award of benefits unless there is no conflicting evidence about the severity of the claimant's impairments. *Earley v. Comm'r of Soc. Sec*., 893 F.3d 929, 934 (6th Cir. 2018); *Faucher v. Sec'y of Health & Human Servs*., 17 F.3d 171, 176 (6th Cir. 1994). And in *Miller v. Comm'r of Soc. Sec.,* the Sixth Circuit declined to remand for an award of benefits because "the record does not allow [the court] to conclude that the claimant is affirmatively entitled to an award of benefits, despite the prolonged nature of these proceedings." 811 F.3d 825, 840 (6th Cir. 2016). Other courts have remanded for an award of benefits when the case had been previously remanded, the plaintiff was an advanced age, and remanding for further consideration of the record would have compounded the delay. *Donahue v. Massanari*, 166 F. Supp. 2d 1143, 1148-50 (E.D. Mich. 2001) (cleaned up); *see also Yoder v. Comm'r of Soc. Sec*., No. 10-14941, 2011 WL 6308313, at *7 (E.D. Mich. Dec. 16, 2011) ("This Court remands this case for an award of benefits because Plaintiff

has endured considerable delay and proof of disability is strong and evidence to the contrary is lacking.”).

These factors favor remanding this case. Plaintiff was a younger individual when she applied for DIB at age 41. *See* ECF No. 9-1, PageID.113; 20 C.F.R. § 404.1563(c). Plaintiff filed her application in July 2023, and this is the first time the Court has remanded the case. The evidence discussed above also contains conflicting evidence that the Commissioner must resolve in the first instance. Thus, the Court cannot determine that plaintiff is entitled to benefits and must remand the case for further consideration.

## IV. Conclusion

The Court **RECOMMENDS** that plaintiff’s motion for summary judgment (ECF No. 12) be **GRANTED**, the Commissioner’s motion for summary judgment (ECF No. 14) be **DENIED**, and the ALJ’s decision be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: October 23, 2026

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 23, 2026.

s/Caitlin Shrum
CAITLIN SHRUM
Case Manager